ANTONIA M. APPS
REGIONAL DIRECTOR
TEJAL D. SHAH
GERALD A. GROSS
JACK KAUFMAN
SHELDON MUI
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
212-336-0106 (Kaufman)
Email: kaufmanja@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>        **Plaintiff,**<br><br>  -against-<br><br>CLARICE SAW,<br><br>        **Defendant.** | <u>COMPLAINT</u><br><br>23 Civ. _____ (   )<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Clarice Saw ("Saw" or "Defendant"), alleges as follows:

### SUMMARY

1. From approximately December 2021 through March 2022, Saw engaged in a fraudulent scheme to misappropriate approximately $2.4 million from an elderly brokerage client of hers ("Customer") while she was associated with a registered broker-dealer ("Registered BD-A").

2. Saw carried out her scheme by obtaining by deception a power of attorney from the Customer, falsifying internal records at Registered BD-A, liquidating all of the Customer's

securities holdings at Registered BD-A without the Customer's authorization, and transferring all of the Customer's holdings at BD-A to Saw's own personal bank and brokerage accounts without the Customer's authorization.

3. Saw used a portion of the misappropriated funds to pay for her personal expenses, including approximately $100,000 in car and mortgage payments and thousands of dollars of cash withdrawals. Saw used additional misappropriated funds to purchase securities in her name in her personal brokerage accounts.

## VIOLATIONS

4. By virtue of the foregoing conduct and as alleged further herein, Defendant Saw has violated Sections 17(a)(1) and (a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (a)(2)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

5. Unless Defendant is restrained and enjoined, she will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

7. The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws this Complaint alleges she has violated; (b) ordering Defendant to disgorge all ill-gotten gains and/or unjust enrichment received as a result of the violations alleged here and to pay prejudgment interest thereon, pursuant to Exchange Act

Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendant to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

9. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendant may be found in, is an inhabitant of, or transacts business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. Additionally, the Customer resides within the Southern District of New York.

## DEFENDANT

11. **Saw**, age 56, is a resident of Pleasantville, New York. Saw has been associated with registered broker-dealers and investment advisers since 1996.

## FACTS

12. From approximately November 2016 to September 2021, Saw was associated with a registered broker-dealer ("Registered BD-B") as a registered representative.

13. In July 2020, the Customer opened a brokerage account at Registered BD-B and Saw became his registered representative.

14. The Customer, who resides in New York, NY, is an 87 year old retiree previously employed as a janitor.

15. The Customer is an immigrant to the United States who does not speak, read, or understand English.

16. In or about October 2015, the Customer's wife passed, and the Customer was the beneficiary of his late-wife's life insurance policy. As of July 2020, the insurance proceeds were valued at approximately $1.8 million.

17. The Customer has no immediate living family members.

18. At or about the time Saw became the Customer's registered representative, Saw learned that the Customer had substantial assets and no immediate family.

19. Saw has the same ethnic background as the Customer and speaks his native language, as well as English.

20. After becoming the Customer's broker, Saw also became involved in certain other aspects of the Customer's life, including accompanying him to medical appointments.

21. In late 2020, Saw suggested to the Customer that he execute a healthcare proxy and appoint Saw as his healthcare agent, which the Customer agreed to do.

22. On December 23, 2020, Saw directed the Customer to sign a document–written entirely in English–which Saw falsely represented to the Customer to be a healthcare proxy.

23. At Saw's request, the Customer executed the document, which he understood to be healthcare proxy (based on Saw's representation).

24. In fact, contrary to what Saw told the Customer, the document he signed was not a healthcare proxy but, rather, a general power-of-attorney designating Saw as the Customer's agent ("POA").

25. As Saw knew, the Customer never intended to execute a power of attorney designating Saw or anyone else as his agent.

26. In September 2021, Saw resigned from Registered BD-B and went to work as a registered representative at Registered BD-A.

27. At or about the same time that Saw changed brokerage firms, Saw convinced the Customer to move his brokerage account from Registered BD-B to Registered BD-A.

28. On October 29, 2021, the Customer opened a brokerage account at Registered BD-A and transferred all of his holdings in his Registered BD-B account into his Registered BD-A account.

29. Under Registered BD-A's internal rules, Saw was required to obtain BD-A's authorization to act as an agent under a power of attorney for anyone other than Saw's immediate family.

30. In violation of BD-A's rules, Saw never obtained BD-A's authorization to be the Customer's agent pursuant to the POA.

31. On November 21, 2021, the Customer was severely injured, and the Customer remained hospitalized until December 7, 2021.

32. Thereafter, the Customer was transferred to a nursing home to recover, where he remained until July 6, 2022, after which he returned to his personal residence.

33. Saw became aware of the Customer's injuries and hospitalization at or about the time that these events occurred.

34. As Saw knew, the Customer held a bank account solely in the Customer's name at TD Bank N.A. (the "TD1 Account").

35. On December 1, 2021, using the POA–and knowing that the Customer was

hospitalized with severe injuries–Saw caused herself to be added to the TD1 Account as a joint-owner of that account.

36. As Saw knew, the Customer never authorized Saw to add herself as a joint-owner of the TD1 Account, and the Customer was unaware that Saw had done so.

37. On December 3, 2021, again using the POA, Saw opened a new bank account at TD Bank N.A., naming herself as the primary account owner and the Customer as the co-owner (the "TD2 Account").

38. As Saw knew, the Customer never authorized Saw to open the TD2 Account or add him as a co-owner of that account, and the Customer was unaware that Saw had done so.

39. On December 15, 2021, unbeknownst to the Customer, Saw posted the following false note to the Customer's Registered BD-A brokerage account, on BD-A's internal computer system: "Due to a change in [the Customer's] health, he decided to fully liquidate all his positions in this account. He wants all his funds to be in cash in his bank account to be ready to be donated away/distributed."

40. Contrary to Saw's December 15 note, the Customer never decided, and never told Saw, that he wanted to liquidate any of the positions in his brokerage account.

41. On December 16, 2021, unbeknownst to the Customer, Saw sold approximately $1.7 million worth of securities in the Customer's brokerage account and transferred the proceeds to the TD1 Account.

42. As Saw knew, the Customer never authorized Saw to liquidate his securities.

43. As Saw knew, the Customer never authorized Saw to transfer any of his funds to the TD1 Account.

44. On December 17, 2021, unbeknownst to the Customer, Saw transferred the $1.7

million sale proceeds from the TD1 Account to the TD2 Account.

45. As Saw knew, the Customer never authorized Saw to transfer any funds from the TD1 Account to the TD2 Account.

46. On December 20, 2021, unbeknownst to the Customer, Saw sold the remaining approximately $730,000 worth of securities in the Customer's BD-A brokerage account–which constituted all of the remaining holdings in that account–and transferred those funds to the TD1 Account.

47. As Saw knew, the Customer never authorized Saw to sell the remaining securities in his BD-A brokerage account or to transfer the sale proceeds to the TD1 Account.

48. On December 20, 2021, unbeknownst to the Customer, Saw transferred the $730,000 sale proceeds from the TD1 Account to the TD2 Account.

49. As Saw knew, the Customer never authorized Saw to transfer the $730,000 from the TD1 Account to the TD2 Account.

50. Shortly afterward, unbeknownst to the Customer, Saw transferred the balance of the TD2 account to various bank and brokerage accounts that Saw held solely in her own name and solely owned.

51. As Saw knew, the Customer never authorized Saw to transfer any funds from the TD2 Account to Saw's own bank and brokerage accounts.

52. As a result of Saw's scheme, Saw misappropriated a total of approximately $2.4 million from the Customer.

53. Unbeknownst to the Customer, Saw used a portion of the funds she misappropriated from the Customer to pay for her personal expenses, such as automobile and mortgage payments.

54. Unbeknownst to the Customer, Saw also made numerous cash ATM withdrawals from the Customer's misappropriated funds, totaling over $46,000.

55. Unbeknownst to the Customer, Saw also held a portion of the Customer's misappropriated assets in various individual securities, which Saw purchased in her own name in her own securities account.

56. As Saw knew, the Customer never authorized Saw to use his investment funds for Saw's own benefit or otherwise to appropriate the Customer's assets and hold them in Saw's own name.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Sections 17(a)(1) and (a)(2)

57. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 56.

58. Defendant, directly or indirectly, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, and/or (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59. By reason of the foregoing, Defendant, directly or indirectly, has violated and, unless enjoined, will again violate Securities Act Sections 17(a)(1) and (a)(2) [15 U.S.C. §§ 77q(a)(1) and (a)(2)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

60. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 56.

61. Defendant, directly or indirectly, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

62. By reason of the foregoing, Defendant, directly or indirectly, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Saw and her agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. §§77q(a)], and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Saw to disgorge all ill-gotten gains and/or unjust enrichment received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

**III.**

Ordering Saw to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and

**IV.**

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: New York, New York
July 28, 2023

*/s/ Antonia M. Apps*
ANTONIA M. APPS
REGIONAL DIRECTOR
Tejal D. Shah
Gerald A. Gross
Jack Kaufman
Sheldon Mui
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 20-100
New York, New York 10004
212-336-0106 (Kaufman)
Email: kaufmanja@sec.gov